IN RE APPLICATION OF CHARLES D. DOHER, DOING BUSINESS AS DOHER TRANSPORT COMPANY.
CHARLES D. DOHER, DOING BUSINESS AS DOHER TRANSPORT COMPANY, APPELLANT, V. MABEL C. HERMAN, DOING BUSINESS AS HERMAN OIL TRANSPORT CO., ET AL., APPELLEES.

67 N. W. 2d 421

Filed December 10, 1954. No. 33609.

*Swenson, Viren & Emmert,* for appellant.

*Jack W. Marer, Robert S. Stauffer,* and *R. E. Powell,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Charles D. Doher, doing business as Doher Transport Company, hereinafter called applicant, filed an application with the Nebraska State Railway Commission, hereinafter called commission, seeking either an extension or interpretation and clarification of two certificates of convenience and necessity theretofore issued to him, authorizing the transportation of petroleum products as an intrastate motor vehicle common carrier for hire. Thereafter a public hearing was held before an examiner who subsequently filed a report with recommendations. Exceptions thereto were argued to the commission en banc. On November 24, 1953, the commission met in a so-called executive session with all commissioners present, whereat minutes of their transactions and proceed-

ings were kept by the secretary of the commission as required by section 75-106, R. R. S. 1943. On November 27, 1953, a letter, signed by the secretary, was mailed by him to applicant, intervener-protestants, and their respective attorneys, reciting therein a copy of the minute entry here involved. Insofar as important here, the letter read: "On the 24th day of November, 1953, the following action was taken by the Nebraska State Railway Commission:

"'Commissioner Brown moved exceptions to Examiner's report in M-8851, Supplement No. 3, Charles D. Doher, dba Doher Transport Co., Nelson, Nebr. be sustained, Examiner's report overruled, application granted in part and certificate interpreted. Voting: Chairman Larson yes; Vice-Chairman Palmer—no; Commissioner Brown—yes. Motion carried.'

"A copy of the formal order will be forwarded to you."

Thereafter, on February 9, 1954, a certified copy of an affirmative written decision or order of the commission made, adopted, and entered by it, entitled "OPINION, FINDING AND ORDER" signed "NEBRASKA STATE RAILWAY COMMISSION /s/ Richard H. Larson Chairman ATTEST: /s/ Marcus L. Poteet Secretary COMMISSIONERS CONCURRING: /s/ Richard H. Larson /s/ Joseph J. Brown * * * PALMER, VICE CHAIRMAN, DISSENTING:" with his signed dissenting opinion attached thereto, was mailed "to the persons affected." Such "Opinion, Finding, and Order" insofar as important here, first specifically recited the provisions of two certificates of convenience and necessity theretofore issued to applicant as well as the authority sought by him in his pending application. It then cited purported applicable precedent and said: "Upon consideration of the application, the files, the record, Examiner's report and recommendation, exceptions thereto, the oral argument of counsel, and being fully advised in the premises, the Commission is of the opinion and finds:

"1. That exceptions to the Examiner's report and recommendation should be sustained.

"2. That the Examiner's report and recommendation should be overruled.

"3. That the authority now held by applicant in M-8851 and M-8851, Supp. #2, should be interpreted and clarified.

"4. That the authority presently outstanding in M-8851 should be revoked and cancelled as it duplicates the authority granted in M-8851, Supp. #2, which authority was issued as a result of a 'grandfather' application.

"5. That the authority issued in M-8851, Supp. #2, should be interpreted and clarified to provide the following service to-wit:" as hereinafter set forth in the order.

The "Order" of the commission then specifically provided: "IT IS THEREFORE ORDERED by the Nebraska State Railway Commission that the exceptions to the Examiner's report in M-8851, Supp. #2, be and the same are hereby sustained; that the Examiner's report and recommendation be and the same is hereby overruled; that the certificate issued in M-8851 be and the same is hereby revoked and cancelled; that the certificate issued in M-8851, Supp. #2, be interpreted and clarified to authorize Charles D. Doher, d/b/a Doher Transport Co., Nelson, Nebraska, to perform the following described service, to-wit:

"SERVICE AUTHORIZED:

"Crude petroleum and all its refined products in bulk in tank trucks.

"ROUTE OR TERRITORY AUTHORIZED:

"From all producing, refining, distributing and loading points in Nebraska, as points of origin, on the one hand, and, on the other hand, all points and places within the State of Nebraska, as points of destination and return of rejected shipments, over irregular routes.

"IT IS FURTHER ORDERED that operations pursuant

to this order shall be subject to such terms, conditions and limitations as have been or may hereafter be prescribed by the Commission.

"MADE AND ENTERED at Lincoln, Nebraska, this 24th day of November, 1953." In that connection, however, concededly no "copy of such order by the commission" was ever mailed "to the persons affected" as required by section 75-406, R. R. S. 1943, until February 9, 1954. Further, it will be noted that the authority sought by applicant, and which the commission found he was entitled to have, as well as that actually authorized by the order of the commission mailed to the persons affected on February 9, 1954, were all identical. Thus such order of the commission actually granted authority broader in scope than contemplated by the minute entry of November 24, 1953.

On February 13, 1954, after receiving a certified copy of such opinion, finding, and order, protestants filed motion for rehearing upon numerous specific grounds which need not be recited here. The motion was subsequently sustained by the commission and applicant appealed to this court, assigning as error solely that the commission was without jurisdiction to enter an order on the motion for rehearing filed by protestants because it was not timely filed as required by section 75-406, R. R. S. 1943. We conclude that the assignment should not be sustained.

In that regard, applicant's contention is that the reviewable order was the minute entry of November 24, 1953, kept by the secretary of the commission and mailed by him on November 27, 1953, from which protestants could allegedly have appealed within 1 month thereafter as provided by section 75-405, R. R. S. 1943, or in the alternative protestants could have filed a motion for rehearing within 10 days after November 27, 1954, as provided by section 75-406, R. R. S. 1943, but having done neither such entry became final and the commission was without jurisdiction to enter any order upon

protestants' motion for rehearing. On the other hand, protestants contend that the minute entry of November 24, 1953, was simply procedural or interlocutory in character and not the kind of order required by sections 75-405 and 75-406, R. R. S. 1943; that the opinion, finding, and order made "by the commission" a copy of which was not mailed "to the persons affected" as required by section 75-406, R. R. S. 1943, until February 9, 1954, was the only proper reviewable decision or order, thus the motion for rehearing was timely filed. We sustain protestants' contention.

In that connection, section 75-405, R. R. S. 1943, provides: "If any railway company, common carrier, or person affected thereby, shall be dissatisfied with the decision of the State Railway Commission affirming, revising, annulling, or modifying any rate or rates complained of in the original schedule, or any subsequent schedule, which may be the subject of investigation, or with *the decision of the commission with reference to any* rate, classification, rule, charge, *order*, act, or regulation *made or adopted by them* upon which there has been a hearing before the commission, except as otherwise expressly provided for herein, such dissatisfied railway company, common carrier, or person affected may institute proceedings in the Supreme Court of Nebraska to reverse, vacate, or modify the order complained of; Provided, the time for appeal from the *orders and rulings of the commission* to the Supreme Court shall be limited to one month from the date of the *entry of the order or ruling* to which complaint is made." (Italics supplied.) However, a procedural companion, section 75-406, R. R. S. 1943, provides: "The procedure to obtain such reversal, modification, or vacation of any *such order* or regulation made and adopted, upon which a hearing has been had before the State Railway Commission, shall be governed by the provisions in force with reference to appeals from the district courts to the Supreme Court of Nebraska; Provided, no motion for a

new trial shall be required to be filed, but instead a motion for rehearing shall be filed *within ten days after the mailing of a copy of such order by the commission to the persons affected, and the time for appeal shall run in case such motion is filed from the date of the ruling of the commission on the motion for rehearing."* (Italics supplied.)

In re Application of Airline Ground Service, Inc., 151 Neb. 837, 39 N. W. 2d 809, involved and permitted the review of a so-called temporary or interim cease and desist order of the commission upon the ground that it was not procedural or interlocutory. In such respect, however, the case is distinguishable from that at bar. In that opinion, so far as important here, we said: "The procedure to be followed in perfecting an appeal under the provisions of section 75-405 is governed by the same provisions in force with reference to appeals from the district court except as otherwise specifically provided. § 75-406, R. S. 1943. It is the contention of the respondents that this section of the statutes provides the manner of perfecting an appeal but does not control the effect of section 75-405 as to the kind of an order from which an appeal can be taken. * * *

"It is fundamental of course that the form of an order or the label placed upon it does not determine its character. It is the *substance of the order* which is controlling in determining its nature. In Columbia Broadcasting System v. United States of America, 316 U. S. 407, 62 S. Ct. 1194, 86 L. Ed. 1563, the court held: *'The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, * * *.'*

"Whether the order before us is reviewable must be determined from Chapter 75, R. S. 1943. The appeal sections of the act are special and control general statu-

tory provisions. The language of section 75-405 to the effect that the decision of the commission with reference to any order made or adopted by them upon which there has been a hearing before the commission is that which affords the right of appeal in the instant case *if such right does in fact exist.*

· "Complainant contends that the words 'any rate, classification, rule, charge, order, act or regulation' contained in section 75-405, should be interpreted to mean only final orders. The Legislature clearly did not limit the right of review to final orders but has conferred the right and limited its exercise to any order upon which there has been a hearing before the commission for the purpose of securing the reversal, vacation, or modification thereof. That the Legislature may properly provide for the review of any order in setting up a special appellate proceeding must be conceded. To fail to give· effect to the plain legislative intent would constitute, an amendment of the act by the judicial rather than the legislative process.

"*This does not mean that a procedural or interlocutory order is reviewable. It simply means that any order meeting the conditions set forth in section 75-405 is reviewable, which involves a justiciable issue that is decisive of some subject matter of which the commission has jurisdiction and the power to enforce against any party to the proceeding.*" (Italics supplied.)

By analogy, the minute entry here involved was simply interlocutory or procedural in character and thus not reviewable. See, also, In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552. It is patent that the minute entry of November 24, 1953, did not meet the requirements of the statute as the entry of an order of the commission. In fact, the letter of transmittal clearly indicates that it was not an order of or by the commission upon any view of the matter. It was simply a voluntary procedural step to ascertain the ultimate type of order which individual members of the commission

would approve or disapprove if subsequently made and entered by the commission. Such minute entry could not upon any theory be construed to be a certificate of convenience and necessity. § 75-231, R. R. S. 1943. Further, applicant's old certificates were at all times in full force and effect until terminated by an order of the commission. § 75-238, R. R. S. 1943. The minute entry did not in any manner deny or grant applicant a certificate or interpret and clarify or terminate his old certificates.

The general rule in comparable cases is that transactions and proceedings of the commission before a certificate of convenience and necessity is duly and regularly denied or is issued and becomes effective by ultimate decision and order of the commission, are essentially procedural or interlocutory in character. Smith Bros. Revocation of Certificate, 33 M. C. C. 465; Manhattan Coach Lines, Inc. v. Adirondack Transit Lines, 42 M. C. C. 123; Lincoln Tunnel Applications, 44 M. C. C. 665; Interstate Motor Transit Co. v. Public Utilities Commission, 119 Ohio St. 264, 163 N. E. 713.

In Rochester Telephone Corp. v. United States, 307 U. S. 125, 59 S. Ct. 754, 83 L. Ed. 1147, involving statutes comparable in principle, the court listed several types of interstate commerce actions in which judicial review should be denied. The type primarily in point here is stated as: "Where the action sought to be reviewed may have the effect of forbidding or compelling conduct on the part of the person seeking to review it, *but only if some further action is taken by the Commission.*" (Italics supplied.) Likewise, as stated in United States v. Los Angeles & Salt Lake R. R. Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651, denying a right of review: "The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, any thing; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not sub-

ject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation." See, also, John J. Casale, Inc. v. United States, 52 F. Supp. 1005.

We find that the minute entry of November 24, 1953, kept by the secretary of the commission and mailed to the parties in interest by him on November 27, 1953, was, under the circumstances, only procedural or interlocutory in character. It was simply a step taken voluntarily without statutory recognition in an incomplete process of legislative or administrative action incident to the subsequent decisive course of the proceeding. It was not the written entry of an order by the commission decisive of the subject matter but required further action by the commission in order to grant or forbid any authority, and thus change applicant's existing status or enforce his future status.

Applicant relied primarily upon Sloan v. Gibson, 156 Neb. 625, 57 N. W. 2d 167, a law action, but such case, in the light of different applicable general statutes, is entirely distinguishable and not controlling here.

We conclude that the reviewable order was the written opinion, finding, and order "of the commission," made and entered "by the commission" a copy of which was mailed "to the persons affected" on February 9, 1954. Therefore, protestants' motion for rehearing was timely filed on February 13, 1954, and action of the commission sustaining the same was not void for want of jurisdiction to act thereon. Since such jurisdictional question was the sole issue presented, the action of the commission should be and hereby is affirmed.

AFFIRMED.