IN RE APPLICATION OF CLEM HERGOTT DOING BUSINESS AS NEBRASKA TRANSPORT SERVICE.
CLEM HERGOTT, DOING BUSINESS AS NEBRASKA TRANSPORT SERVICE, APPELLANT, V. NEBRASKA STATE RAILWAY COMMISSION, APPELLEE: LEROY ANDERSON ET AL., INTERVENERS, APPELLEES.

15 N. W. 2d 418

FILED JULY 21, 1944. No. 31782.

101

*Baldwin & Pike* and *R. E. Powell,* for appellant.

*Walter R. Johnson, Attorney General, Edwin Vail* and *W. F. Manasil, contra.*

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is an appeal from an order of the Nebraska state railway commission, changing and revoking, in part, the certificate of public convenience and necessity, issued to Clem Hergott, doing business as Nebraska Transport Service, Hubbell, Nebraska. For convenience, the Nebraska state railway commission will be hereinafter referred to as the commission; Clem Hergott, doing business as Nebraska Transport Service, as appellant; and Ray Peake, doing business as Peake Oil Company of Hubbell, Nebraska, will be referred to as Peake.

Prior to the enactment of chapter 142, Laws 1937, the Nebraska motor carrier act, Peake, as a carrier, transported petroleum products. On November 30, 1937, the commission issued to Peake a certificate of public convenience and necessity under application No. M-2332. Section 75-228 (d), Comp. St. Supp. 1937, provided that under such circumstances Peake would be required only to show the operations previously performed by him on April 1, 1936, in keeping with the "grandfather" clause contained in section 75-228 (d), *supra,* and the certificate of public convenience and necessity was issued under the application, No. M-2332. The authorized operation granted Peake as a common carrier for hire in intrastate commerce was the transportation of petroleum products exclusively and specifically. The route or territory authorized was: "Irregular routes from Hubbell and Superior, to and from Orleans and Chester, and occasionally to and from Oshkosh and Lamar and Omaha, and various points in the State at large."

Appellant filed application No. M-6368 with the commission June 25, 1940, requesting that the certificate of public convenience and necessity, previously issued to Peake, be transferred to him. On July 23, 1940, the commission issued a certificate of public convenience and necessity to appellant, authorizing operation as a common carrier by motor vehicle for hire in intrastate commerce. This certificate granted the appellant the exact and identical authority previously granted to Peake.

On June 12, 1942, an order to show cause was entered against the appellant, to appear June 30, 1942, and show cause, if any there be, why his certificate should not be suspended, revoked or altered for abandonment of service and cessation of operations over all, or a part of, the territory, and for failure to comply with the lawful rules and regulations of the commission, and for willful failure to comply with the provisions of the Nebraska motor carrier act and with the lawful orders and regulations promulgated thereunder. Hearing was had on July 15, 1942. On September 11, 1942, an examiner's report was filed, recommending that the order entered on June 12, 1942, be vacated in part and sustained in part, and the certificate issued to appellant to be altered to read: "Service Authorized: Petroleum products in bulk. Route or Territory authorized: Irregular routes from Superior as a point of origin, to Fairbury, Reynolds, Benedict and Bradshaw as points of destination." Exceptions to the order were filed, argument had thereon November 4, 1942, before the commission en banc; exceptions were overruled on December 15, 1942. The commission approved the order, and further ordered appellant to forthwith cease and desist all operations as a common carrier of petroleum products in Nebraska intrastate commerce except in conformity with the certificate as modified. July 15, 1943, motion for rehearing was filed, argued before the commission en banc September 29, 1943, and overruled October 7, 1943; hence this appeal.

In the 1937 session of the legislature an act was passed, commonly referred to as the Nebraska motor carrier act.

Comp. St. Supp. 1937, secs. 75-222 to 75-238, inclusive. Amendments of a minor nature have been made to the act as originally passed, but it is now substantially the same in form. Comp. St. Supp. 1941.

The commission is a constitutionally created body. Section 20, art. IV of the Constitution, provides in part: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision."

In conformity with such constitutional provision, the legislature has the right to prescribe how the commission shall proceed and what authority it may exercise in granting certificates of public convenience and necessity for operation of motor vehicles for hire intrastate.

As said in *Enyeart v. City of Lincoln,* 136 Neb. 146, 285 N. W. 314, "All statutes relating to the same subject are considered as parts of homogeneous system * * * ." And in *Steeves v. Nispel,* 132 Neb. 597, 273 N. W. 50, this court said: "So too, all statutes *in pari materia* must be taken together and construed as if they were one law, and, if possible, effect be given to every provision." Citing *Hendrix v. Rieman,* 6 Neb. 516, and other cases. See, also, *O. G. Pierce Co. v. Century Indemnity Co.,* 136 Neb. 78, 285 N. W. 91; *Lennox v. Housing Authority of City of Omaha,* 137 Neb. 582, 290 N. W. 451. In conformity with the foregoing authorities, we consider the Nebraska motor carrier act.

The act recites a policy to "regulate transportation by motor carriers * * * in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical and efficient service * * * develop and preserve a highway transportation system, properly adapted to the needs of the commerce of Nebraska; * * * ." Comp. St. Supp.

1941, sec. 75-222. It places upon the commission the duty to regulate common carriers by motor vehicle, and to that end the commission may establish reasonable requirements with respect to continuous and adequate service. Comp. St. Supp. 1941, sec. 75-222.

The appellant predicates error in that the commission acted contrary to law by changing and revoking, in part, the certificate of public convenience and necessity held by him, and in failing to conform to the provisions of section 75-231, Comp. St. Supp. 1941. The commission contends that the certificate of public convenience and necessity, once issued, is not final, but rather that the commission has continuing jurisdiction over any certificate of public convenience and necessity which it may issue by the express terms of section 75-228 (d), Comp. St. Supp. 1941, the applicable portion of which reads: "Any certificate issued under this Section shall specify the service to be rendered and the routes over which the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which such carrier is authorized to operate; and there shall, at the time of issuance and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, * * * ."

Section 75-228 (d) is similar in language to, and appears to have been copied in part from, the federal motor carrier act of 1935, 49 U. S. St. at Large, part I, ch. 498, sec. 208 (a), 49 U. S. C. A. sec. 308 (a), and is the same for all practical purposes.

Section 75-231, Comp. St. Supp. 1941, cited by the appellant as constituting the power of the commission to change, revoke or suspend a certificate of public convenience and necessity, upon which appellant relies, reads as follows: "Permits and certificates shall be effective from the dates specified therein and shall remain in effect until terminat-

ed as herein provided. Any such permit or certificate may, upon application of the holder thereof, in the discretion of the Commission be revoked or may, upon complaint or on the Commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part for wilful failure to comply with any provisions of this Act or with any lawful order, rule or regulation of this Commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate." The foregoing section is similar in language and appears to have been copied in part from the federal motor carrier act of 1935, 49 U. S. St. at Large, part I, ch. 498, sec. 212(a).

. The commission calls attention to *Effenberger v. Marconnit*, 135 Neb. 558, 283 N. W. 223. At page 563 this court said:

"We necessarily conclude that a certificate of convenience and necessity is in the nature of a permit or license and that it is not property in any legal or constitutional sense. It is a mere license that can be amended or revoked by the power authorized to issue it. Such being the case, it is personal in its character, is not transferable, and does not pass by succession. It is purely a regulatory measure that can vest no property right in the holder. This being true, the railway commission has the sole power to grant, amend, deny, revoke or transfer a certificate of (public) convenience and necessity."

Appellant cites No. MC-16670, *Smith Bros. Revocation of Certificate*, 33 M. C. C. 465. The Interstate Commerce Commission had before it the consideration of the revocation of a certificate. Certain complainants contended that respondents had abandoned certain of their operations, and that, due to a provision in the certificate which required that the carrier should continue to perform service in conformity with such certificate, the rights of Smith Brothers were automatically forfeited when they ceased to perform such services. In this connection section 208(a), 49 U. S. St. at Large, part I, ch. 498, 49 U. S. C. A. sec. 308(a), was cited. This section of the statute for all practical purposes

is analogous to section 75-228(d), Comp. St. Supp. 1941. On page 471 of the *Smith Bros.* case the commission said: .

"The power to attach terms, conditions, and limitations granted by the above section (section 208(a), *supra,*) is a broad one, but it is questionable whether it was intended that we should regulate service through 'terms, conditions, and limitations,' in view of the fact that in section 204(a) (1) (49 U. S. St. at Large, part I, ch. 498, setting forth the duty of the commission to regulate common carriers, which, for all practical purposes, is analogous to section 75-225, Comp. St. Supp. 1941), we are given the power to 'establish reasonable requirements with respect to continuous and adequate service.' Assuming but not determining that we can regulate service through 'terms, conditions, and limitations,' even such a broad power is inadequate to permit what in effect is a modification of a separate provision of the act. (See 49 U. S. St. at Large, part I, ch. 498, sec. 212(a), which language is identical with section 75-231, Comp. St. Supp. 1941, as heretofore quoted.) The United States Supreme Court has frequently held that the Commission is an agency of limited powers and authority; that, while Congress may delegate to the Commission certain of its own powers and authority, the exercise of such delegation does not extend beyond expressed enactment or its fairly implied inferences; and that important powers should not be read into the act by implication but should be conferred in clear and unmistakable terms." Citing cases. The commission further said: "We have also found that, in the absence of specific language, only the most unmistakable evidence of the intention to confer upon us (the commission) the power to act under given circumstances would warrant the assumption of such power through our own construction of the act. *Wisconsin R. Comm. v. Chicago & N. W. Ry. Co.,* 87 I. C. C. 195.

"It therefore is first necessary to ascertain whether Congress intended by the words 'terms, conditions, or limitations,' to empower us (the commission) to include self-executing forfeiture provisions in certificates in view of the provisions contained in section 212(a)."

One of the questions before the commission in the foregoing case was whether, assuming that the commission would find that respondents ceased all operations, such cessation automatically, and without further proceedings on the commission's part, constitutes a forfeiture and termination of the certificate. In connection with this question section 208(a), *supra*, was considered as the authority to terminate the certificate. Likewise, in the instant case, the commission relies on section 75-228(d), Comp. St. Supp. 1941, and contends that under such provision the appellant's certificate may be changed and that the jurisdiction is continuing; so practically the same question was involved in the *Smith Bros.* case, and especially in view of the consideration of section 204(a) (1), *supra*, analogous to section 75-225, Comp. St. Supp. 1941.

There is no contention made by appellant that the commission is not privileged to suspend, change or revoke, in whole or in part, a certificate of public convenience and necessity. The contention is that, in order to do so, the commission must proceed under section 75-231, Comp. St. Supp. 1941. Referring again to the *Smith Bros.* case, the commission said that the word "terminate", appearing in section 212(a), *supra*, (and such word appears also in section 75-231, *supra*,) "is a technical word to describe the end or termination of a period." Therefore, section 212(a), *supra*, (and it may properly be said section 75-231, *supra*,) provides one method for terminating a certificate and that is by revoking it. In giving the interpretation to section 212(a), *supra*, the commission in the *Smith Bros.* case, said:

"In our opinion, the language (of the section) * * * is clear and definite and unmistakably shows that Congress intended that a certificate, once effective, may be terminated by us (the commission) only on the conditions, and according to the procedure, therein specifically provided. * * * but once a certificate, duly and regularly issued, becomes effective, our authority to terminate it is expressly marked off and limited. * * * To hold that under section 208(a) we have the power to include in certificates self-executing for-

feiture terms, conditions, or limitations would make section 212 (a) merely surplusage and would wipe out the stability and certainty with respect to operating rights of common carriers by motor vehicle required in the public interest and contemplated by the act."

Section 75-228 (d), Comp. St. Supp. 1941, does not make reference to the provisions of certificates themselves. It states that the commission has the power to attach to the exercise of the privileges granted by the certificates such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require. Certain general orders have been issued by the commission in keeping with such reasonable terms, conditions or limitations of such privileges as the public convenience and necessity may from time to time require. Such are reflected by General Order 81, in accordance with section 75-232, Comp. St. Supp. 1941, governing the filing and approval of policies of insurance, qualifications of carriers, self-insurers, filing of other securities or agreements, conditioned to pay all judgments recovered against all motor carriers for bodily injuries to, or the death of, any person, resulting from the maintenance or negligent operation of motor vehicles under certificates or permits, and for the loss or damage to property of others; regulations requiring common carriers to compensate shippers for damage in transit. Motor tariffs and supplements thereto have been adopted and published; providing a method for computing distances to and from all points and places; forms of freight bills have been standardized, and other matters.

It will be further noted that section 75-228 (d), Comp. St. Supp. 1941, does not contain the words "terminate," "revoke," "change," or "suspend," a certificate of public convenience, in whole or in part. Section 75-231, *supra*, provides (1) that a certificate may be revoked in the discretion of the commission upon application of the holder; (2) the commission may in its discretion upon complaint, or upon its own initiative, suspend, change or revoke the certificate, in whole or in part, "for wilful failure to comply with

any provisions of this Act or with any lawful order, rule or regulation of this Commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate." It will be noted that the language, "any term, condition or limitation of such permit" obviously refers to section 75-228 (d), Comp. St. Supp. 1941. The commission has specified terms, conditions or limitations with reference to certificates, which are incorporated in the rules and regulations adopted by the commission as provided for in section 75-225, Comp. St. Supp. 1941.

The question next arises as to whether or not the order to show cause in the present case is sufficient and complete.

The fundamental point is not the name given to the pleading, but whether appellant was apprised of the charge against him. The show-cause order was sufficiently comprehensive to acquaint appellant with the nature of the proceedings. However, in compliance with section 75-231, Comp. St. Supp. 1941, there must be a willful failure on the part of the carrier to comply with the provisions of this act, or with any lawful order, rule or regulation of this commission, promulgated thereunder, or with any term, condition or limitation of such certificate. The commission's order, revoking in part the certificate of public convenience and necessity of the appellant and changing the certificate, did not contain a finding of willful failure to comply with any provisions of the act, etc. By statute, willfulness is one of the essential facts to be determined by the commission before it possesses the power to revoke, in whole or in part, a certificate of public convenience and necessity. Because a violation was found in the commission's findings, it does not follow that it included a willful violation.

In the case of *State ex rel. Northeast Transportation Co. v. Abel,* 10 Wash. (2d ser.) 349, 116 Pac. 2d 522, while the statutes involved are not the same, but similar in import, the assignment of error is whether or not the order to show cause conferred jurisdiction on the department to revoke the certificate of public convenience and necessity, and it

was held that an order to show cause was a sufficient pleading and notice thereon and the hearing sufficient. But, upon the proposition that under the statute there must have been a willful violation of a departmental order, and the findings of the department must clearly indicate such willful violation, the order did not contain the last two elements mentioned, and upon failure of the department to make a finding as to whether its order was willfully violated it was held to be fatal as to its validity.

Under the Nebraska statute, willfulness is one of the essential facts to be determined by the railway commission before it can properly revoke a certificate of public convenience and necessity. The fact that a violation was found to exist does not meet the requirements of the statute. When a finding of willfulness is not made, the order of revocation is irregular and will, on appeal, be vacated and set aside.

It will be noted that section 75-231, Comp. St. Supp. 1941, deals specifically with suspension, change or revocation, in whole or in part, of a certificate of public convenience and necessity "for wilful failure to comply with any provisions of this Act," and no other provision of the Nebraska motor carrier act covers the same subject matter except by inference or indirectly. Therefore, section 75-231 must be considered a special statutory provision with regard to a particular subject and, as such, controls the general provisions with regard to such subject. *City of Grand Island v. Willis*, 142 Neb. 686, 7 N. W. 2d 457; *Dawson County v. Whaley*, 134 Neb. 509, 279 N. W. 164.

We hold that the commission, in order to revoke, change or suspend a certificate of public convenience and necessity, must proceed in accordance with the provisions of section 75-231, Comp. St. Supp. 1941, and, should the commission, after hearing, revoke, change or suspend the certificate, it must do so for willful failure to comply with the provisions of the act or with any lawful rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate. This hold-

ing is not in conflict with *Effenberger v. Marconnit, supra,* because this provision of the statute in no sense considers a certificate of public convenience and necessity a property right, but recognizes that it may be changed, suspended or revoked, in whole or in part, by its creator, the commission. The section simply designates the proper procedure to be followed, should the question of revocation, in whole or in part, or a change or suspension of a certificate of public convenience and necessity, arise.

"On appeal to the supreme court from an order of the Nebraska state railway commission, while acting within its jurisdiction, the question for determination is the sufficiency of the evidence to prove that the order is not unreasonable or arbitrary." *In re Application of Chicago, B. & Q. R. Co.,* 138 Neb. 767, 295 N. W. 389.

The statute (Comp. St. Supp. 1941, sec. 75-231) requires "wilful failure to comply with any provisions of this Act or with any lawful order, rule or regulation of this Commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate." The order of the commission in the instant case failing to include such finding of willful violation is irregular and will be set aside on appeal. Therefore, we will not review the evidence to ascertain whether or not the violation, if any, of the certificate of public convenience and necessity was willful.

REVERSED.