IN RE APPLICATION OF DEAN RESLER, DOING BUSINESS AS PLATTE VALLEY TRUCK COMPANY. DEAN RESLER ET AL., APPELLANTS, V. NIELSEN & PETERSEN, INC., ET AL., APPELLEES.

48 N. W. 2d 718

Filed July 10, 1951.   No. 32994.

*Loyal G. Kaplan, Marion F. Jones,* and *Samuel V. Cooper,* for appellants.

*Harry F. Russell* and *R. E. Powell,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

On June 3, 1949, the Nebraska State Railway Commission, hereinafter called the commission, entered an order requiring respondent, Dean Resler, doing business as Platte Valley Truck Co., to show cause in application No. M-7036, supplements Nos. 4, 5, and 6, why an order should not be entered suspending, revoking, or changing his regular route certificate of public convenience and necessity, which required him to serve all intermediate points between described termini, for willful cessation of service and abandonment of all or a part of his operations and for willful failure to obtain commission approval to discontinue or abandon said operations in violation of General Order 81, and for willful failure to comply with the provisions of sections

75-222 to 75-250, R. R. S. 1943, and lawful orders, rules, and regulations promulgated thereunder by the commission. After notice duly given, hearing was had thereon, consolidated with transfer application No. M-9324 before an examiner, whereat evidence was adduced and a consolidated report was made to the commission containing certain recommendations in respect to both matters. Exceptions were filed by respondent, and an order of the commission was subsequently rendered, modifying the examiner's report in some particulars.

The commission's order sustained in part its order to show cause issued in M-7036, supplements Nos. 4, 5, and 6, and revoked and canceled respondent's certificates in part for willful violation of the Motor Carrier Act, and rules and regulations of the commission promulgated thereunder. It particularly ordered that respondent's rights and authority to serve all intermediate points between Omaha and North Platte over U. S. Highway No. 30 and all intermediate points between Omaha and McCook over U. S. Highway No. 6 should be revoked and canceled for willful cessation or abandonment of regular scheduled services thereover without first obtaining commission approval, in violation of the Motor Carrier Act, and General Order 81 promulgated thereunder.

It then approved Application No. M-9324 as modified, and consolidated all of respondent's remaining authority in the Platte Valley Truck Co., a corporation, with one certificate of convenience and necessity. The consolidated certificate was further ordered to contain specific alternate routes for operating convenience only.

Motion for rehearing was overruled, and respondent appealed, assigning that the order finding that there was willful cessation or abandonment of service by respondent and ordering revocation of authority to serve all intermediate points aforesaid, was unreasonable, arbitrary, contrary to law, and in excess of the

'commission's jurisdiction. We conclude that the assignment has no merit.

No complaint was made that the proceedings were consolidated for hearing and report. Application No. M-9324, only incidentally involved, simply concerned application for acquisition by the Platte Valley Truck Co., a corporation, of all the Nebraska intrastate operating rights and authority previously held by respondent as an individual doing business as Platte Valley Truck Co. In that connection, any restriction imposed upon the authority granted to respondent individually would, as a matter of course, be continued in any authority that might be granted to the Platte Valley Truck Co., a corporation, as a result of the acquisition of respondent's authority. It is so conceded by appellees, and appellant complains here only of the revocation of authority to serve all intermediate points between Omaha and North Platte over U. S. Highway No. 30, and between Omaha and McCook over U. S. Highway No. 6.

Section 75-238, R. R. S. 1943, provides: "Permits and certificates shall be effective from the dates specified therein, and shall remain in effect until teminated as herein provided. Any such permit or certificate may, upon application of the holder thereof, in the discretion of the State Railway Commission, be revoked or may, upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part, for willful failure to comply with any of the provisions of sections 75-222 to 75-250, or with any lawful order, rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate."

In that regard, General Order 81, insofar as important here, provides that the commission may, after notice and hearing, suspend, change, or revoke any motor carrier's certificate for willful violation of the following:

"(8) Failure of carriers to actually operate their own equipment, or equipment leased with Commission ap-

proval, over the entire certificated route.

"(9) Failure of carriers to obtain Commission approval to:

"(a) Discontinue either in whole, or in part, service authorized under a certificate or permit.

"(d) Serve all or a portion of their certificated route by interline agreements with other carriers."

This court has heretofore concluded that the Nebraska State Railway Commission has jurisdiction and authority to suspend, change, or revoke a certificate of convenience and necessity in whole or in part, provided that in so doing it proceeds in conformity with section 75-238, R. R. S. 1943. In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418; Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363. Insofar as important here, it appears that the commission proceeded in conformity with such statute.

It was said in In re Application of Hergott, *supra*: "We hold that the commission, in order to revoke, change or suspend a certificate of public convenience and necessity, must proceed in accordance with the provisions of section 75-231, Comp. St. Supp. 1941 (now section 75-238, R. R. S. 1943), and, should the commission, after hearing, revoke, change or suspend the certificate, it must do so for willful failure to comply with the provisions of the act or with any lawful rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate."

In Union Transfer Co. v. Bee Line Motor Freight, *supra*, as in the case at bar, it was contended that the evidence did not establish a "willful failure" to comply with any of the provisions of the statute or any reasonable order, rule, or regulation of the commission promulgated thereunder, or with any term, condition, or limitation of such permit or certificate. Consequently, respondent argued that the order revoking or changing the certificate was arbitrary and unreasonable. In that

opinion it was said: "The word 'willful' like many other words in our language has varied meanings which are dependent upon the nature of the subject under discussion. The word often denotes an act which is voluntarily, knowingly, or permissively done as distinguished from one which is accidental or otherwise beyond the control of the person to be charged. The general notion that a willful act implies a bad purpose is derived from criminal statutes. It has no such meaning when used in a statute to denounce an act not in itself wrong. 'Willful failure,' as used in section 75-238, R. S. 1943, is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of. A failure to perform an act for a long period of time, which is required by law to be performed, generally constitutes a willful failure to perform. * * * The willful failure or refusal of a carrier to obtain permission from the railway commission to discontinue in whole or in part the service authorized under a certificate of convenience and necessity constitutes sufficient grounds to suspend, change, or revoke the certificate under general rules adopted by the railway commission. No claim is advanced that any such permission was sought or obtained. The evidence being sufficient to sustain the finding of willful failure to comply, the holding that the operating rights had been abandoned, and the order revoking the certificate, cannot be said to be unreasonable or arbitrary. The railway commission clearly acted within the scope of its authority. The evidence is sufficient to sustain the action of the commission. Under such circumstances this court will not interfere with findings of fact made by the commission."

In that case it was specifically held: "The term 'willful failure,' as used in section 75-238, R. S. 1943, is such behavior. through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of.

"Where there is evidence which, if believed, is sufficient to sustain the finding of the railway commission that a willful failure to comply with an order of the commission had occurred, an order based on such finding is not unreasonable or arbitrary.

"Unless an order of the railway commission is shown to be unreasonable or arbitrary, this court is not authorized to interfere with the power of the commission to regulate common carriers."

Those statements and holdings have application to the case at bar and control decision.

Christianson and Green Revocation of Certificate, No. MC-679, 42 M. C. C. 238, and Hickman, Revocation of Certificate, No. MC C-1121, 52 M. C. C. 201, relied upon by respondent, are both clearly distinguishable upon the issues involved and facts presented.

In the light of the rules of law heretofore stated, we have examined the record, and conclude that sufficient competent evidence was adduced to sustain the order of the commission. It will be summarized because too voluminous to recite in detail. There was competent evidence that respondent had operated between Omaha and North Platte via U. S. Highway No. 30 as terminal points, with consistent regularity three days a week, with six days a week west of North Platte, since September 1946. He had not refused any shipments because none had been tendered, but he did not particularly solicit or desire business for any point on U. S. Highway No. 30 intermediate between the termini of Omaha and North Platte, because his delivery facilities are slower than his competitors who were handling such shipments, and he could not promise or render as efficient service. Thus he had been performing but little service, only 12 or 15 shipments in the last 6 months, to not more than 5 intermediate points between such termini, and none of them upon any regular basis. As a matter of fact, admittedly 95 percent of the business handled by respondent between Omaha and North Platte consisted

of shipments destined to North Platte or points west thereof. In other words, although required by his certificate to serve all of the many such intermediate points regularly, respondent at all times had voluntarily and intentionally failed to do so.

Admittedly, for 2 to 2½ months prior to June 15, 1949, respondent had voluntarily been conducting no operations whatever directly over U. S. Highway No. 6 between the termini of Omaha and McCook, but as instructed and directed by respondent, all shipments originating in Omaha destined for McCook, were routed through North Platte over U. S. Highway No. 30, thence to Sterling, Colorado, and thence back to McCook or points east thereof, sometimes on his own equipment, but generally by interline with another company, as required by it in order to obtain the use of docking facilities at McCook. In that regard, nothing was wrong with U. S. Highway No. 6 itself, and respondent's competitors used it, but respondent had not conducted regular operations over it as aforesaid because freight tonnage dropped off or down too low to warrant the service to be performed by him. Since about a week or more before the hearing, and after notice of the order to show cause, respondent had conducted operations between the terminal points of Omaha and McCook via U. S. Highway No. 6 three days a week. In any event, however, during the last six months respondent had performed none or but little service to only a few of the many intermediate points between such termini, and none to them upon any regular basis. Further, as heretofore observed, he had not even been available to continuously and adequately perform such regular service.

The record discloses that defendant had terminals at Omaha and North Platte, and at Sidney, Kimball, Ogallala, and Scottsbluff, all west of North Platte. The record discloses no other terminals owned or leased by respondent upon either route. The record also discloses

only two docks available to respondent, one at McCook, owned by a competitor, and one at Sidney, rented by respondent.

Concededly, respondent had not at any time made any application to the Nebraska State Railway Commission requesting authority to discontinue or abandon his regular route operating rights in whole or in part, and he had not in any manner advised the Nebraska State Railway Commission of the fact that he was not continuing all operations over all of the highways over which he held authority and had not provided all of the services required by his certificate, although he knew that such approval was required. All of such failure was a direct violation of valid General Order 81 and the laws of this state, of which respondent admittedly had full knowledge.

We conclude, in the light of such evidence and the authorities heretofore cited, that the order of the commission was sustained by ample competent evidence and in conformity with law. Therefore, it was not arbitrary, unreasonable, or contrary to law.

For the reasons heretofore stated, we conclude that the order of the commission should be and hereby is affirmed.

AFFIRMED.